# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

GLENN WAYNE BURNETT,

    Plaintiff,

vs.                                                CASE NO. 3:11-cv-19-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____

## ORDER AND OPINION

This matter is before the Court on Plaintiff's complaint (Doc. #1), seeking review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for disability insurance benefits (DIB) and supplemental security income (SSI) disability payments. Plaintiff filed a legal brief in support of the complaint (Doc. #14). Defendant filed a brief in support of the decision to deny disability benefits (Doc. #17). Both parties consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by the Order of Reference dated November 9, 2011 (Doc. #20). The Commissioner has filed the transcript of the underlying administrative proceedings and evidentiary record.[1]

Upon review of the record, the Court found the issues raised by Plaintiff were fully briefed and concluded oral argument would not benefit the Court in making its determinations. Accordingly, the matter has been decided on the written record. For the reasons set out herein, the decision is **AFFIRMED.**

---

[1]Hereafter, the Court will identify the Transcript as "Tr." followed by the appropriate page number.

**PROCEDURAL HISTORY**

Plaintiff filed applications for DIB and SSI with the Social Security Administration on August 30, 2006 (Tr. 132-39). Plaintiff alleged an onset of disability as of June 22, 2006 (Tr. 132, 137). In the Disability Report-Adult dated December 22, 2006, Plaintiff alleged he was unable to work due to a bad heart, bipolar disorder and arthritis (Tr. 155- 62). The applications were denied initially and upon reconsideration. An administrative hearing was held on November 5, 2008 in Jacksonville, Florida before Administrative Law Judge (ALJ) Lisa Martin (Tr. 29-74). Plaintiff appeared and testified at the hearing, as did vocational expert (VE) Mr. Jackson McKay (Tr. 31, 83-85). Plaintiff was represented at the administrative hearing by attorney James McCall (Tr. 31). The ALJ issued the decision denying Plaintiff's claims for DIB and SSI on January 14, 2009 (Tr. 15-28). Plaintiff requested review of the hearing decision by the Appeals Council, but the request was denied (Tr. 1-5). Thus, the ALJ's decision became the final decision of the Commissioner. Thereafter, Plaintiff's current counsel of record, L. Jack Gibney, Esq., filed the instant complaint in federal court on January 6, 2011 (Doc. #1 at 1).

**SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ DECISION, AND THE STANDARD OF REVIEW**

A plaintiff is entitled to disability benefits under the Social Security Act only when he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 20 C.F.R. § 404.1505.[2] The

---

[2]Unless otherwise specified, all references to 20 C.F.R. will be to the 2011 edition. As the Regulations for SSI disability payments mirror those set forth for DIB on the matters

Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). Plaintiff bears the burden of persuasion through step four, while at step five the burden temporarily shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).

The ALJ's decision dated January 14, 2009 denied Plaintiff's claims (Tr. 18-28). At step one, the ALJ found Plaintiff had no substantial gainful activity since June 22, 2006 (Tr. 20). ALJ Martin found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2010 (Tr. 20). At step two, the ALJ found Plaintiff had the severe impairments of bipolar disorder, cervical and lumbar spine disorder, coronary artery disease (CAD) and history of drug and alcohol abuse (Tr. 20). At step three, the ALJ found these impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 21). The ALJ next determined that Plaintiff had the residual functional capacity (RFC) to "perform sedentary work [. . .] not involving climbing of ladders, ropes or scaffolds, more than occasional climbing of ramps and stairs, more than occasional balancing, kneeling, stooping, crouching and crawling, and no exposure to dangerous work hazards, heights or machinery" with the additional limitation that he perform only routine, repetitive work tasks with no more than occasional contact with co-workers, the public and supervisors (Tr. 23). At step four, the ALJ determined Plaintiff could not perform any of his past relevant work (Tr. 26). At step five, the ALJ determined there were other jobs with sufficient available positions that Plaintiff could

---

presented in this case, from this point forward the Court may refer only to those sections in 20 C.F.R. pertaining to part 404 and disability insurance benefits.

perform, such as lens inserter, surveillance system monitor and document preparer (Tr. 27). Thus, the ALJ determined Plaintiff is not disabled within the meaning of the Social Security Act (Tr. 28).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so. While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Serv's.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d

1143, 1145 (11th Cir. 1991)).  Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

In all Social Security disability cases, the plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his impairments.  *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.").  It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove the existence of disabling physical or mental functional limitations.  20 C.F.R. § 404.704.

## BACKGROUND AND ANALYSIS

Plaintiff, Glenn Wayne Burnett, was born on July 28, 1963 (Tr. 37, 132).  Therefore, he was forty-five (45) years old on the date of the ALJ's decision.  The record establishes that Plaintiff lives alone and has been supporting himself with his savings and help from his parents (Tr. 36).  Plaintiff earned a college degree in graphic design (Tr. 37).  Plaintiff has past relevant work with an engraving company in sales and production (Tr. 38), with a printing company as a counter sales clerk, and independently doing painting and home improvement odd jobs (Tr. 52-53).

Plaintiff raises two issues on appeal (Doc. #14 at 6, 10). First, Plaintiff argues the ALJ erred by not affording appropriate weight to the opinion of treating psychiatrist Dr. Sunas Joshi (Doc. #14 at 6). Second, Plaintiff argues that the ALJ erred by not considering the effect of pain on Plaintiff's concentration, persistence or pace (Doc. #14 at 10-11). The Commissioner counters that the ALJ's decision was supported by substantial evidence (Doc. #17 at 4). The Commissioner specifically argues Dr. Joshi's assessment contained no supporting documentation and did not include a diagnosis or any medical signs or laboratory findings (Doc. #17 at 6). Further, the Commissioner argues Dr. Joshi based his assessment on Plaintiff's report of his symptoms rather than on objective findings (Doc. #17 at 6). The Commissioner additionally argues the ALJ's credibility finding is supported by substantial evidence because "Plaintiff has not shown that his pain caused any limitations in concentration, persistence or pace" (Doc. #17 at 10).

**A. Dr. Joshi's Assessment**

If a treating physician's opinion on the nature and severity of a claimant's impairments is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d). Generally, the more consistent an opinion is with the record as a whole, the more weight it will be given. *See* 20 C.F.R. § 404.1527(d)(4). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards v. Sullivan*, 937 F.2d at 583; *see also Bloodsworth*, 703 F.2d at 1240. The United States Court of Appeals for the Eleventh Circuit has concluded "good

cause" exists to discount a treating physician's opinion when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or, (3) the treating physician's opinion is conclusory or inconsistent with his own medical records. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

The ALJ's decision reflects his consideration of Dr. Joshi's opinion evidence regarding Plaintiff's abilities in each of the four areas of functioning related to a mental impairment (*see* Tr. 21-22); *also see* 20 C.F.R. § 404.1520a. The ALJ found Dr. Joshi's assessment was inconsistent with, among other things: (1) Plaintiff's most recent treatment records as of the date of the decision; (2) Plaintiff's testimony; and, (3) Dr. Joshi's own treatment records of Plaintiff because, *inter alia*, those records fail to document any observations of concentration lapses to support finding a marked limitation in concentration, persistence or pace (Tr. 21-22).

The record before the ALJ reflected Plaintiff treated with Sunas Joshi, M.D., of Psychiatric Associates for mental health problems on and off from approximately April 2005 through May 2007 (Tr. 329-66).[3] At the intake examination on March 31, 2005, Plaintiff was diagnosed with bipolar disorder (Tr. 365-66). During this time, he saw Carl Holmes, LCSW, also of Psychiatric Associates, for individual therapy sessions (Tr. 329-66). Holmes' treatment notes reflect Plaintiff's mental impairment symptoms waxed and waned. *See id.* At times Plaintiff was found to have more organized and goal oriented thoughts,

---

[3]Additional records were submitted to the Appeals Council documenting further treatment with Dr. Joshi and Carl Holmes in June and July 2009. The Court does not consider these records because Plaintiff is not challenging the AC's decision to decline review. *See Ingram v. Commissioner of Social Sec. Admin.*, 496 F.3d 1253 (11th Cir. 2007).

7

improving insight, less irritability, less depression, and improved relationships (*see, e.g.*, Tr. 343, 345, 358). At other times, Holmes noted Plaintiff had continuing substance abuse, depression, outbursts of anger, audio and visual hallucinations and an inability to perform activities of daily living without help or supervision from his parents (Tr. 334-37, 339-40, 342, 347, 362, 364-66).

However, by May 31, 2007, the last date of treatment prior to the hearing, Holmes noted improvement in Plaintiff's hygiene and that Plaintiff was increasing his socialization (Tr. 330). Plaintiff admitted he was painting his house and advised there was no more use of marijuana or alcohol (Tr. 330). More than a year later, apparently without seeing Plaintiff during the intervening time,[4] Dr. Joshi completed a "Personality Disorders Professional Source Data Sheet" form (Tr. 504-13). Dr. Joshi reported that Plaintiff had marked difficulty in his activities of daily living (ADLs), social functioning, and concentration, persistence or pace, including twelve specific marked limitations, which he later defined as affecting Plaintiff more than 75% of the time (*see* Tr. 519-20), and moderate limitations for nearly every other specific area of functioning (Tr. 504-13, 520).[5] In contrast to Dr. Joshi's assessment indicating severe mental health problems, there was no evidence in the record

---

[4]Other than Dr. Joshi's opinion evidence, the record is devoid of any medical evidence from either Dr. Joshi or Carl Holmes after May 31, 2007 until June 10, 2009, which is the date of the first mental health treatment note submitted to the Appeals Council (*see* Tr. 621).

[5]The form was signed by both Dr. Joshi and Carl Holmes. The Court notes that one of the pages of the form, on which these particular findings were made, does not contain any possible level of limitation other than "marked" and that "marked" was not defined on the form (*see* Tr. 508). Later pages include moderate or marked limitation levels, but again these terms are without definition (Tr. 511-12)

before the ALJ that Plaintiff sought mental health treatment after May 31, 2007.[6]

On October 5, 2006, Dr. Joshi referred Plaintiff to James Larson, M.D., for inpatient therapy due to depression with suicidal ideation (Tr. 254-56). Plaintiff was released five days later and advised to continue with his medication, take more control of his future and begin to actively seek employment (Tr. 254-56). When Plaintiff's counsel requested that Dr. Larson provide an opinion regarding Plaintiff's limitations in 2009, Dr. Larson stated that he was unwilling to change his opinion from 2006, but also noted that it would be appropriate and medically prudent to defer to the treating psychiatrist (Dr. Joshi) (Tr. 10).[7]

Dr. Joshi's assessment is contradicted by the opinions of two Division of Disability Determination doctors who reviewed Plaintiff's records and gave their expert opinions (Tr. 285-98, 477-90). *See also* 20 C.F.R. § 404.1513(c); SSR 96-6P, 1996 WL 374180 (S.S.A. Jul. 2, 1996) (findings made by State Agency medical consultants must be treated as expert opinions of non-examining sources). The first review was on March 22, 2007 by Gary Buffone, Ph.D. who found Plaintiff had an affective disorder, a personality disorder and substance addiction disorders, none of which were determined to be severe (Tr. 285). He determined Plaintiff had only a mild restriction in activities of daily living, social functioning, and concentration, persistence or pace, with no episodes of decompensation of extended duration (Tr. 295). Dr. Buffone also noted that when Plaintiff is sober and

---

[6]The records presented to the Appeals Council reflect Plaintiff did not return for mental health treatment until June 10, 2009–over two years later–when he again reported symptoms of depression and paranoia (Tr. 621). On July 8, 2009, the last treatment date in the record, Dr. Joshi diagnosed Plaintiff with mild to moderate depression and noted good response to medication (T. 618).

[7]Nothing in Dr. Larson's letter indicates he had seen Dr. Joshi's records (*see* Tr. 10).

9

taking his medications, "MS[8] and ADLs [are] largely intact w[ith] no evidence of a severe mental impairment" (Tr. 297).  Similarly, on August 6, 2007, Angeles Alvarez-Mullin, M.D., agreed Plaintiff had bipolar disorder and polysubstance abuse in short term remission, but determined the impairments were not severe (Tr. 477, 480, 485).  Dr. Alvarez-Mullin also found Plaintiff had mild restrictions in activities of daily living, social functioning and concentration, persistence or pace, along with one to two episodes of decompensation and a history of noncompliance with treatment (Tr. 487).  Dr. Alvarez-Mullin further noted that as of the date of the report, Plaintiff had no problems with personal care and was able to pay bills, drive, shop and prepare simple meals (Tr. 489).

In support of finding Plaintiff was markedly limited in social functioning, Dr. Joshi referenced Plaintiff's report of being skeptical of people, outbursts of anger, and misinterpreting the intentions of others (Tr. 508).  Recognized examples of impaired social functioning include "demonstrating a history of altercations, evictions, firings, fear of strangers, avoidance of interpersonal relationships, or social isolation." 20 C.F.R. Part 404, Subpart P, Appendix 1, 12.00C(2); *see also* Tr. 22 (ALJ's reference to these examples). Holmes, Plaintiff's therapist, noted multiple times that Plaintiff was socially withdrawn (*see* Tr. 332, 334, 339, 340, 358, 364), but Plaintiff testified at the hearing that he simply prefers his own company (Tr. 51).  While the record contains evidence that Plaintiff was fired in June 2006 after being charged with assaulting a co-worker, Plaintiff's description of the event leading to the charge indicated "nothing of [that] sort occurred" (Tr. 254).

Dr. Joshi concluded that Plaintiff had marked limitations in concentration,

---

[8]Presumably, "MS" is an acronym for mental status or mental state.

persistence or pace due to an inability to complete tasks or projects including paying bills, laundry, and household maintenance (Tr. 508). While it was noted early in treatment, that Plaintiff relied on his parents to grocery shop and clean his home, the more recent treatment notes show a vast improvement in Plaintiff's ability to care for himself and his home (*see, e.g.*, Tr. 330). In addition to painting his house, Plaintiff testified at the hearing that he drives a car, keeps his doctor appointments and plays musical instruments (Tr. 50). After review of the record, the undersigned finds only one mental health treatment note stating Plaintiff had concentration difficulties; the treatment note, however, was written on April 6, 2005, which is prior to the alleged onset date (Tr. 364). Therefore, the ALJ's determination that Dr. Joshi's notes do not document observations of concentration lapses is supported by substantial evidence.

Upon review and consideration, the Court finds substantial evidence supports the ALJ's determination that Dr. Joshi's assessment that Plaintiff had marked limitations in social functioning and in concentration, persistence or pace is inconsistent with the record in general, including Plaintiff's testimony. Additionally, the Court finds substantial evidence supports the ALJ's finding that Dr. Joshi's assessment is not consistent with the most recent treatment notes from his practice. Moreover, Dr. Dr. Joshi's opinion is not bolstered by the record as a whole. Therefore, the undersigned finds the ALJ had good cause to discount Dr. Joshi's opinion.

**B. The Effects of Plaintiff's Pain**

It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove they suffer from disabling physical or mental functional limitations.

20 C.F.R. § 404.704. When weighing a plaintiff's credibility with respect to the effect of pain, an ALJ must use a three step process. *Foote v. Chater*, 67 F.3d at 1560-61. The ALJ must determine if there is evidence of an underlying medical condition, and if so, the ALJ must determine whether either there is objective medical evidence that confirms the severity of the alleged pain arising from that condition or that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *Id.*

Plaintiff argues the ALJ failed to properly consider the effects of Plaintiff's pain on his ability to work, expressly referring to a lack of specific limitations in the area of concentration, persistent or pace due to Plaintiff's pain (Doc. #14 at 10-11). In consideration of Plaintiff's complaints of disabling pain, the ALJ found Plaintiff partially credible (Tr. 24). In determining Plaintiff's subjective statements concerning the intensity, persistence and limiting effects of his pain were not fully credible, ALJ Martin found neither Plaintiff's alleged physical limitations for cardiac or back problems, nor his alleged mental limitations from panic/anxiety attacks, were corroborated by his treatment records. *Id.* The ALJ also found Plaintiff was not fully credible because the record established Plaintiff's alleged impairments were not the only reason he stopped working and his testimony he could not control his thinking or act in his own best interest was contradicted by his testimony on his activities of daily living, including his adherence to a medication regime and seeking follow-up treatment. *Id.*

Plaintiff treated with Bao T. Pham, D.O., of the Florida Spine Care and Pain Center, from October 2006 to August 2007 for neck and back pain (Tr. 368-473). Dr. Pham implemented a treatment plan to reduce Plaintiff's pain which included trigger point

injections, facet block injections, and a Fentanyl patch (*see* Tr. 472).[9]  Throughout his treatment history with Dr. Pham, Plaintiff reported a reduction in pain and Dr. Pham noted improvement in functional ability(*see, e.g.,* Tr. 407-12, 417, 419-21, 427-28).  Significantly, there is no mention in Dr. Pham's treatment notes of Plaintiff having any difficulties relating to concentration, persistence or pace due to his pain (*see* Tr. 381-473).

On April 17, 2007, Plaintiff presented for a consultative examination with William V. Choisser, M.D., J.D. (Tr. 299-304).  Dr. Choisser diagnosed Plaintiff with coronary artery disease, bipolar disorder and osteoarthritis (Tr. 300).  While the clinical exam of Plaintiff's cervical and lumbar spine was within normal limits, Dr. Choisser noted this was likely due to the use of a Duragesic patch (Tr. 299).  Plaintiff did not report, and Dr. Choisser did not find, any difficulties or limitations relating to concentration, persistence or pace.

On October 23, 2008, Dr. Pham's office submitted a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" form provided by Plaintiff's counsel (Tr. 515- 518).  Dr. Pham limited Plaintiff to lifting less than ten pounds, standing and walking less than two hours, and sitting to less than six hours in an eight-hour workday (Tr. 515-16). Dr. Pham precluded[10] Plaintiff from climbing ramps, stairs, ladders, ropes or scaffolds, balancing, kneeling, crouching, crawling, and stooping (Tr. 516).  Dr. Pham did not suggest any limitations related to concentration, persistence or pace due to Plaintiff's pain.

It is true that the ALJ did not explicitly discuss the effect of pain when determining

---

[9]Either trigger point injections or facet block injections were performed on most dates of service.

[10]This finding was changed from "frequently" with no explanation other than Dr. Pham's initials as to why Plaintiff was so severely restricted.

13

Plaintiff had only mild limitations in concentration, persistence or pace (Tr. 22). However, the record is nearly devoid of evidence that Plaintiff's concentration, persistence or pace is effected by pain. The ALJ's decision reflects her consideration of the record as a whole, including Plaintiff's testimony and the submitted medical evidence. The ALJ's assessment of Plaintiff's residual functional capacity limits Plaintiff to sedentary work with additional physical restrictions and the limitation of only routine, repetitive work tasks with no more than occasional contact with co-workers, the public and supervisors (Tr. 23). Plaintiff has failed to present evidence that his level of pain exceeds the demands of sedentary work with the additional restrictions set forth in the RFC.

On these facts, the Court finds substantial evidence supports the ALJ's findings Plaintiff had mild limitations in concentration, persistence or pace and Plaintiff has not submitted evidence to support his contention that pain affects his ability to maintain concentration, persistence or pace in the workplace. Moreover, the ALJ articulated specific and adequate reasons based on substantial evidence for finding Plaintiff's statements were not entirely credible. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991).

## CONCLUSION

For the foregoing reasons, the undersigned finds the decision of the ALJ is supported by substantial evidence. Accordingly, the Commissioner's decision is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this Order and Opinion and, thereafter, to close the file. Each party shall bear its own costs.

**DONE AND ORDERED** at Jacksonville, Florida this 5th day of March, 2012.

Copies to all counsel of record

*Thomas E. Morris*
**THOMAS E. MORRIS**
United States Magistrate Judge